# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**UNITED STATES OF AMERICA**

v.                          **CASE NO. 2:18-CR-23-KS-MTP**

**CARL NICHOLSON**

## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Defendant's Motion for a New Trial [70].

### I. BACKGROUND

On December 12, 2018, the Government charged Defendant in an 11-count Superseding Indictment. Count One alleged that Defendant conspired to defraud the Government by impeding, impairing, or obstructing the collection of taxes, in violation of 18 U.S.C. § 371. Counts Two through Five alleged that Defendant prepared and filed false tax returns, in violation of 26 U.S.C. § 7206(1). Counts Six through Eleven alleged that Defendant assisted in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2). The Court held a jury trial on February 4-8, 2019, and the jury convicted Defendant on all counts. Defendant later filed a Motion for a New Trial [70].

### II. DISCUSSION

Rule 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Rule 33 "goes to the fairness of

the trial rather than the question of guilt or innocence." *United States v. McRae*, 795 F.3d 471, 481 (5th Cir. 2015). "Rule 33 motions are disfavored and reviewed with great caution." *United States v. Pratt*, 807 F.3d 641, 645 (5th Cir. 2015). The Court has "wide discretion," *United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016), but it must exercise its discretion "with caution" because "the power to grant a new trial . . . should be invoked only in exceptional cases." *United States v. Scroggins*, 485 F.3d 824, 831 (5th Cir. 2007). "Generally, . . . the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of the evidence preponderates against the verdict." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004).

A. *Summary Witness and Charts*

Defendant argues that the Court erred by permitting the Government to introduce the summary witness testimony of IRS Special Agent Bradley Luker. Defendant contends that Luker improperly summarized the testimony of other witnesses, and that Luker provided expert opinions, despite not being designated as an expert.[1]

"There is an established tradition, both within this circuit and in other circuits, that permits a summary of evidence to be put before the jury with proper limiting

---

[1] Defendant also argues that the Government introduced charts during Luker's testimony that were not based on previously admitted evidence. This is simply not true. The Court reviewed the transcript and exhibits, and both Luker's summary testimony and the charts admitted during his testimony were based on evidence previously admitted during the trial. Defendant has not identified a specific exhibit introduced during Luker's testimony that he believes was improper, and the Court declines to guess.

instructions." *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003). Such testimony is allowed in "limited circumstances in complex cases," *United States v. Baker*, – F.3d – , 2019 WL 1873306, at *4 (5th Cir. Apr. 26, 2019), to "aid the jury in its examination of the evidence already admitted." *Griffin*, 324 F.3d at 349. For example, summary witnesses "may be appropriate for summarizing voluminous records," but they are "not to be used as a substitute for, or a supplement to, closing argument." *Baker*, 2019 WL 1873306 at *4. "To minimize the danger of abuse, summary testimony must have an adequate foundation in evidence that is already admitted, and should be accompanied by a cautionary jury instruction. Moreover, full cross-examination and admonitions to the jury minimize the risk of prejudice." *Id.* at *5.

This was a complex case meriting the introduction of summary evidence. The Superseding Indictment included eleven different counts. In Count 1, the Government charged Defendant with conspiring to defraud the United States by impeding, impairing, obstructing, or defeating the Internal Revenue Service's ability to collect taxes, in violation of 18 U.S.C. § 371. In Counts 2-6, the Government charged Defendant with willfully submitting tax returns with false information, in violation of 26 U.S.C. § 7206(1). In Counts 7-11, the Government charged Defendant with aiding or assisting in the preparation or presentation of tax returns containing false information, in violation of 26 U.S.C. § 7206(2). Tax cases are generally tedious, document-intensive affairs. This one was no different. The case involved accounting

concepts, nuances of tax law, and business arrangements outside the experience of most jurors. There were dozens of exhibits consisting of hundreds of pages. Even the Court had trouble following the evidence at some points during the trial.

Moreover, Counts 2-6 were predicated upon Defendant's failure to report income received from his accounting firm in the form of expense reimbursements. The Government presented voluminous evidence demonstrating that many of these payments were not, in fact, reimbursements. Rather, Defendant submitted fraudulent reimbursement requests, effectively stealing from his partners. The Government introduced several years' worth of Defendant's credit card statements, encompassing thousands of individual charges. The Government cross-referenced those statements with Defendant's reimbursement requests and demonstrated that he received "reimbursement" for charges made by his wife and son for goods and services unrelated to the firm's business. For example, Defendant received reimbursement for dating websites, iTunes charges, a medical concierge service, his son's legal fees related to a divorce, dental work, and veterinary services, among many others. While the general theory underlying this aspect of the Government's case was simple – Defendant stole from his partners and didn't declare the stolen funds as income – the evidence was voluminous and required connecting the dots among various documents and witnesses.

In this respect, Agent Luker's testimony was necessary and helpful to the jury. It "consisted of reading the contents of exhibits and sorting through the evidence to

show how the documents related to each other and to charges in the indictment." *Id.* at *6. Luker "highlighted some key pieces of evidence," and his "testimony did not draw inferences for the jury, was not wholly argumentative, and did not serve as a substitute for closing argument." *Id.* For these reasons, it was appropriate summary witness testimony.

Defendant is correct that Luker restated the prior testimony of previous witnesses on numerous occasions, particularly the testimony of Frank McWhorter concerning the nature of Defendant's credit charges and whether they were reimbursable as business expenses. But "[a]s a summary witness, an IRS agent may testify as to the agent's analysis of the transaction which may necessarily stem from the testimony of other witnesses." *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993). To an extent, an agent providing summary testimony can not avoid referring to prior witnesses' testimony. While it is impermissible for "one prosecution witness merely to repeat or paraphrase the in-court testimony of another as to ordinary, observable facts," this was not such a case. *United States v. Castillo*, 77 F.3d 1480, 1500 (5th Cir. 1996). Luker's investigation was built on information gleaned from interviews with witnesses such as McWhorter, and, therefore, it was necessary to refer to some prior testimony when explaining the Government's investigation and the source of figures in its summary charts.

Defendant also contends that Luker provided expert testimony, despite not being designated as an expert witness. Defendant has not identified any specific

5

opinions that were improper, and the Court declines to guess. However, the record demonstrates that Luker simply summarized the evidence which demonstrated that Defendant's tax returns were false. He did not express his opinion on a material element of the charged crimes. Rather, he recounted the timeline of his investigation and referred to previously admitted documents and testimony which supported the Government's charges.

Even if the Court erred in admitting Luker's testimony, the error was harmless. The evidence of Defendant's guilt was overwhelming, and the Court doubts that Luker's testimony made a difference one way or the other. Defendant has not demonstrated that Luker's testimony "had a substantial and injurious effect or influence in determining the jury's verdict." *Baker*, 2019 WL 1873306 at *4. Regardless, significant curatives were present: Luker's testimony had an adequate foundation in the evidence already admitted, Defendant's counsel had an opportunity to cross-examine Luker, and the Court gave a limiting instruction regarding summary evidence. *Id.* at *6. Additionally, Defendant has not demonstrated that any of Luker's testimony was misleading or erroneous. *See Griffin*, 324 F.3d at 350.

Finally, despite Defendant's repeated assertions to the contrary in briefing, Luker was not presented as a rebuttal witness. The Government put him on as the final witness in its case-in-chief, and Defendant had an opportunity to present his own evidence regarding the topics covered in Luker's testimony. It was not a given that Defendant would rest without presenting any evidence. In fact, he provided a

witness list and designated an expert. Therefore, Luker's testimony was not impermissible "rebuttal testimony by an advocate summarizing and organizing the case for the jury . . . ." *United States v. Fullwood*, 342 F.3d 409, 414 (5th Cir. 2003).

## B.    *Comments*

Next, Defendant argues that certain comments made by the Court and witnesses were prejudicial and compromised his ability to receive a fair trial. First, during direct examination, John Lee explained how he and Defendant conspired to submit fraudulent tax returns, and he made an offhand comment about Defendant not testifying before a grand jury. He said:

> And then Mr. Nicholson's office coded. They're the ones that put the classifications as to what each check was for. And most of them they put on there was supplies, which was . . . a lie, because they were not legitimate deductions. And that's what my children and my wife told [the Government] before the grand jury. Mr. Nicholson was subpoenaed to go up there to that grand jury. . . . But he didn't go.

After Lee's comment, Defendant moved for a mistrial outside the presence of the jury. The Court denied the motion, finding that the comments about the grand jury were not elicited by the Government or intentionally interjected by the witness. Also, the Government did not emphasize the comments or draw attention to them. In fact, the Court recalls that it had to increase the volume on Mr. Lee's microphone so that everyone in the courtroom could clearly hear his testimony.

The Court noted that it had already instructed the jury that Defendant was not required to testify, but it offered to provide a strong instruction to disregard the comments and have the jurors affirm on the record that they would do so. Defendant

accepted the Court's offer, and the Court gave the following instruction once the jury came back in:

> Ladies and gentlemen, on Monday when you were empaneled I asked you a number of questions and gave you some instructions. Remember right after you were selected I read the instructions just before going to lunch, and you took the oath to abide by my instructions, and everybody raised their hand. Y'all remember that.
>
> There was a statement made by this witness, Mr. Lee. It said – he said – this was not in response to a question by the Government, but he said Mr. Nicholson was subpoenaed to the grand jury but did not go.
>
> You are – this is an instruction from the court that you're required to follow. You are directed and instructed to disregard that remark by Mr. Lee. To take it – take nothing from it. To not go to that, use that in any way in your deliberations, and as best you can put it out of your mind and ignore it from . . . your consideration and . . . what you consider in reaching your verdict in this case.
>
> Only that one sentence is what I'm referring to, that's what you should disregard, and not use it in any way in determining your verdict.

The Court then polled the jury, asking if they would follow the Court's instruction on the matter, and they unanimously affirmed they would do so.

Of course, "[t]he Fifth Amendment prohibits a trial judge, a prosecutor, or a witness from commenting upon a defendant's failure to testify in a criminal trial." *United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990). "The test for determining if a constitutional violation has occurred is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." The comment "must have a clear effect on the jury before reversal is warranted." *Id.*

8

As noted above, Lee did not intend to comment on Defendant's failure to testify, and the Government did not elicit the remark. It was an offhand comment without any emphasis, and the Court provided a strong curative instruction. Defendant has not provided any evidence that it affected the jury's deliberations. In fact, the jury specifically affirmed to the Court that they would disregard the comment. Therefore, the Court concludes that Lee's comment did not violate Defendant's constitutional rights. Even if it had, the Court's instructions "provided ample protection against any prejudicial impact" it may have had on the jury's deliberation. *United States v. Cervantes*, 706 F.3d 603, 614 (5th Cir. 2013); *see also United States v. Weast*, 811 F.3d 743, 753 (5th Cir. 2016); *United States v. McMillan*, 600 F.3d 434, 453 (5th Cir. 2010). And the Court presumes that the jury follows its instructions. *United States v. Reed*, 908 F.3d 102, 115 n. 42 (5th Cir. 2018).

Next, Defendant argues that Marcia Wright, an accountant who prepared Defendant's 2015 tax return, made improper statements about the burden of proof in this case. On direct examination, the Government asked Wright about changes Defendant had directed her to make to his tax returns which increased the basis in an asset and, therefore, decreased his profit upon its sale. When asked whether she would typically make such changes without documentation, Wright said: "No, normally I would not, but Carl knows what basis is. He knows the documentation that you have to have, that he would need – in the event anything comes up, you've got to have documentation of it. The burden of proof is on the client." Defendant's

9

counsel immediately asked to approach and moved for a mistrial, arguing that the witness had implied that Defendant had the burden of proving his innocence.

The Court denied Defendant's motion for a mistrial, noting that the witness was factually correct: in the event of an audit, the taxpayer has the burden of proof. It was clear from the testimony's context that Wright was addressing Defendant's potential tax liability in the event of an audit, not his criminal liability in this proceeding. The Court noted that it had already instructed the jury that the Government had the burden of proof, but, as a cautionary measure, it gave the jury another instruction:

> Ladies and gentlemen, there was a question asked by [Government's counsel] and an answer by Ms. Wright when they were talking about . . . being concerned about the documentation. And Ms. Wright said the burden is on the client, which in this case would be . . . her client, which would be Mr. Nicholson.
>
> She was referring to an audit, a tax audit, not a criminal prosecution. In a tax audit, the burden is on the client, the taxpayer, to provide documentation, and using the terms "the burden is on the client" was referring to that, not a criminal prosecution.
>
> In a criminal prosecution, and y'all recall on Monday, from the very beginning, I told you that the burden is on the Government . . . to prove the Defendant guilty beyond a reasonable doubt. That burden has always been the burden on the . . . prosecution, on the side bringing the case, to prove the Defendant guilty beyond a reasonable doubt.
>
> You will disregard the statement – the response made by Ms. Wright when she said "the burden is on the client." That has nothing to do with this case. It is a matter involving an audit, not a criminal prosecution.

The Court then polled the jurors, asking them to affirm that they would follow the Court's instructions and disregard Wright's comment, and they unanimously

affirmed that they would do so.

Of course, it is inappropriate for a Government witness to attempt to shift the burden of proof to the Defendant. *United States v. Terrell*, 754 F.2d 1139, 1148 (5th Cir. 1985). In determining whether such comments merit a new trial, the Court considers "the magnitude of the prejudicial effect of the remarks, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt." *United States v. Smith*, 997 F.2d 881, 1993 WL 261127, at *1 (5th Cir. 1993).

Wright's comment was not prejudicial. It plainly had nothing to do with the burden of proof in this trial. Rather, she was commenting on the burden of proof in a tax audit. Regardless, the Court immediately provided a curative instruction, in addition to its general instructions on the burden of proof before the trial began and before closing arguments. Finally, the evidence of Defendant's guilt was overwhelming, and it is unlikely that Wright's comment made any difference in the jury's verdict. For these reasons, the Court finds that Wright's comment does not merit a new trial. *See United States v. Valas*, 822 F.3d 228, 247 (5th Cir. 2016); *United States v. Lucas*, 516 F.3d 316, 349 (5th Cir. 2008).

Finally, Defendant argues that the Court inadvertently violated his constitutional rights by suggesting to the jury that the Defendant would put on evidence before he elected to rest without presenting any evidence. After the Government rested, the Court said:

> All right. Ladies and gentlemen, you have heard all of the evidence in
> the Government's case-in-chief that you will hear. The Government has

11

rested. Now there are some things that the court needs to take up outside of your presence. You'll need to go back to the jury room, but when you come back in the Defendant will be presenting his case-in-chief. He'll be call – will call the witnesses that he intends to call in his case-in-chief. But right now you need to go back to the jury room and there will be some matters taken up outside of your presence.

After the jury left, Defendant's counsel drew the Court's attention to the comment and moved for a mistrial. The Court denied the motion and offered to provide a curative instruction. Defendant's counsel asked the Court to clarify that Defendant has the "opportunity" to present evidence, "but not the obligation." After the jury returned, the Court gave the following instruction: "Ladies and gentlemen, I misspoke a minute ago when I sent you out. On Monday, I told you that the – in my instruction that the Defendant is allowed to but not required to call any witnesses, and that's the defendant's . . . right. And . . . now I'm going to offer to the Defendant the right to present his case-in-chief." In addition to this immediate curative instruction, the Court gave general instructions regarding the burden of proof at the beginning of trial and before closing arguments.

The Court's comment was not prejudicial insofar as it did not imply that Defendant was obligated to present evidence in his defense. Rather, in context, it was clear that Defendant would be given the opportunity to present evidence. Regardless, the Court gave numerous instructions throughout the trial as to the burden of proof, including an immediate curative instruction. These instructions were enough to cure any prejudice that may have resulted. Moreover, the evidence of Defendant's guilt was so great that the Court's comment could not have made any difference.

12

## C. *Evidence of Tax Liability*

Defendant also argues that the Court erred by admitting evidence of Defendant's tax liability. The Court admitted a draft of Defendant's 2015 tax return. The draft return, Marcia Wright's testimony, and correspondence between Defendant and Wright demonstrated that Defendant received the draft return, which included an outside basis of $150,000.00 for his interest in the accounting firm. Defendant directed Wright to change the outside basis to $450,000.00, without any explanation or documentation. The Government introduced the draft tax return to prove the materiality of the false information on Defendant's 2015 tax return, and Defendant's willfulness.

Defendant cites *United States v. Antolik*, 696 F. App'x 165, 166 (5th Cir. 2017), arguing that evidence of tax liability is not relevant to a prosecution under 26 U.S.C. § 7206(1). In *Antolik*, a defendant wanted to introduce "revised tax returns for the years at issue that were prepared prior to trial." *Id.* at 165. The Fifth Circuit held that the district court did not abuse its discretion in excluding the revised tax returns because "evidence of tax liability, while holding some logical relevance, is not legally relevant to a prosecution under § 7206(1)." *Id.* (citing *United States v. Johnson*, 558 F.2d 744, 745-46 (5th Cir. 1977)).

However, both *Antolik* and *Johnson* address situations where a defendant sought to present evidence that he had mitigated the tax deficiency caused by his false return. *Id.*; *see also Johnson*, 558 F.2d 745. The Fifth Circuit has affirmed the

13

exclusion of such evidence because when a defendant is "tried only for willfully making false statements on his . . . tax returns, his tax liability or overpayment [is] irrelevant." *Johnson*, 558 F.2d at 745. Defendant has not directed the Court to any case in which the Fifth Circuit reversed a conviction because the Government introduced irrelevant evidence of a defendant's tax liability. In that respect, the Fifth Circuit seems more concerned with the potential for defendants to use evidence of overpayment as a form of jury nullification or to cloud the issues at trial. Regardless, the Court agrees that the draft return was relevant to the charges for the reasons argued by the Government.

Even if the Court erred by admitting the 2015 draft tax return, Defendant has not demonstrated any prejudice meriting a new trial. As the Court has already noted, the evidence of Defendant's guilt was overwhelming. Moreover, the Court provided the following instruction to the jury: "Whether the Government has or has not suffered a pecuniary or monetary loss as a result of the alleged false statements is irrelevant to a charge under Section 7206(1)." Therefore, any prejudicial effect from admission of the draft tax return was cured. *Johnson*, 558 F.2d at 747.

### D. *Cumulative Error*

Finally, Defendant argues that these issues cumulatively compromised his ability to receive a fair trial.

> The cumulative error doctrine provides than an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal. The doctrine justifies reversal only in the

14

unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial. The defendant's allegations of non-error do not play a role in cumulative error analysis since there is nothing to accumulate.

*United States v. Eghobor*, 812 F.3d 352, 361 (5th Cir. 2015) (citations omitted). For the reasons stated above, the Court finds that no error was committed. Regardless, the Court finds that any cumulative error was not sufficiently egregious to violate Defendant's right to a fair trial.

### III. CONCLUSION

For these reasons, the Court **denies** Defendant's Motion for a New Trial [70].

SO ORDERED AND ADJUDGED this 16th day of May, 2019.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE